IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SONJA BLANCHARD,

                    Plaintiff,

vs.                                    Case No. 09-1143-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On June 7, 2007, administrative law judge (ALJ) William G. Horne issued his decision (R. at 18-30). Plaintiff alleges that she has been disabled since January 1, 2001 (R. at 18). Plaintiff is insured for disability insurance benefits through September 30, 2004 (R. at 20). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since January 1, 2001, the alleged onset date of disability (R.

at 20).  At step two, the ALJ found that plaintiff had the following severe impairments: disorders of the knee and back, depression and obesity (R. at 20).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21).  After determining plaintiff's RFC (R. at 22), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 28).  At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 29-30).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30).

**III.  Did the ALJ err by his failure to list certain impairments as "severe" impairments at step two?**

As noted above, the ALJ found that plaintiff's severe impairments included disorders of the knees and back, depression and obesity (R. at 20).  Plaintiff argues that the ALJ erred by not listing obsessive compulsive disorder (OCD) and anxiety as severe impairments (Doc. 13 at 15).

The issue before the court is whether it is reversible error if the ALJ fails to list all the severe impairments at step two. In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that

plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal. However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

The ALJ stated that, in making his RFC findings, he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence (R. at 22). In light of the fact that the ALJ found other severe impairments at step two, and considered all symptoms in the subsequent steps of the sequential evaluation process, the court finds no reversible error by the ALJ at step two.

**IV.  Did the ALJ err in his credibility analysis?**

Plaintiff argues that the ALJ erred in his credibility analysis (Doc. 13 at 27). Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in

determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ discussed the medical and testimonial evidence in some detail, and set forth a number of specific reasons for

discounting her credibility (R. at 23-27). The ALJ discussed the specific evidence that he relied on in determining that plaintiff's complaints were not fully credible, and linked his credibility determination to specific findings of fact fairly derived from the record. The court finds that the ALJ's credibility findings are reasonable; there is sufficient evidence which a reasonable mind might accept as adequate to support the ALJ's credibility findings.

**V. Did the ALJ err in his evaluation of the opinions of Dr. Brown, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the

medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or

testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Brown, plaintiff's treating physician, stated on June 29, 2006 that plaintiff would have marked difficulty standing or walking for at least 12 months resulting in severe functional limitation (R. at 502, 504), and Dr. Brown's RFC assessment of November 3, 2006 indicated that plaintiff could only stand and/or walk for 2 hours in an 8 hour workday, and could only sit for 2 hours in an 8 hour workday (R. at 5, 516). The ALJ noted his opinions, including the opinion of Dr. Brown that plaintiff could perform less than the full range of sedentary work and would need to lie down or recline 3-5 times a day for 10-40 minutes each time because of pain or fatigue (R. at 28). The ALJ gave little weight to the opinions of Dr. Brown because his opinions were inconsistent with the results of certain testing, the opinion of Dr. Zafuta, the opinion of the medical expert, and the lack of

findings consistent with neurological abnormalities (R. at 28).

The ALJ relied on the medical record from Dr. Zafuta that plaintiff's disease did not look that advanced radiographically (R. at 24, 514), the nonexamining physician opinion from Dr. Richmond that plaintiff's allegations are not proportional to the objective medical evidence or the opinions of the medical examiners (R. at 27, 283), and the examining physician opinion from Dr. Toma that plaintiff could perform light work with some restrictions (R. at 24, 277) as evidence providing a legitimate basis to discount the opinions of Dr. Brown and plaintiff's credibility. The ALJ also relied on the testimony of Dr. Spindell, an orthopedic surgeon, who reviewed the medical records and testified at the hearing on April 3, 2007 (R. at 26, 593, 601-605). Dr. Spindell testified that the range of motion in plaintiff's knees is "considered quite good" (R. at 602). He noted that the records did not show that she is utilizing any external support (R. at 603). He opined that plaintiff is capable of sedentary work, if not light work (R. at 604). He found no basis in the record for elevating plaintiff's legs (R. at 605). He indicated that several of the examiners felt that there was a disproportionate relationship between what they found and the degree of her complaints (R. at 605).

As set forth above, a treating physician's opinion is entitled to controlling weight only if the opinion(s) is well

supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. The ALJ gave little weight to the opinions of Dr. Brown because of the other medical evidence in the record as set forth above, including the opinions of Dr. Zafuta, another treating physician, Dr. Toma, an examining physician, and other physicians who had reviewed the medical records in the case. The court finds that the opinions of Dr. Brown were clearly inconsistent with other substantial evidence in the record, and the ALJ therefore did not err by failing to give controlling weight to his opinions. Furthermore, in light of the other medical evidence in the record, including contrary medical opinion evidence, the court finds that the ALJ gave good reasons in his decision for according little weight to the opinions of Dr. Brown.

## VI. Did the ALJ make proper RFC findings pursuant to SSR 96-8p?

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why

the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.

SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,

1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative

discussion describing how the evidence supports each conclusion,

citing to specific medical facts and nonmedical evidence, the

court will conclude that his RFC conclusions are not supported by

substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.

781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must

be sufficiently articulated so that it is capable of meaningful

review; the ALJ is charged with carefully considering all of the

relevant evidence and linking his findings to specific evidence.

Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5,

2003).  It is insufficient for the ALJ to only generally discuss

the evidence, but fail to relate that evidence to his

conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49

F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to

comply with SSR 96-8p because he has not linked his RFC

determination with specific evidence in the record, the court

cannot adequately assess whether relevant evidence supports the

ALJ's RFC determination.  Such bare conclusions are beyond

meaningful judicial review.  Brown v. Commissioner of the Social

Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan.

2003).

The ALJ made the following RFC findings for the plaintiff:

> After careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional capacity
> to perform the full range of sedentary work
> except for being limited to simple,
> repetitive work that is as stress free as
> possible. She can perform simple grasping and
> fine manipulation and occasionally bend,
> twist, stoop, kneel and climb stairs. She
> cannot climb ladders, scaffolds or ropes or
> work at unprotected heights or around
> dangerous moving machinery. She would need to
> work on a level, smooth, non-vibrating
> surface, cannot use foot controls and would
> need a sit/stand option of either 30 minutes
> standing or sitting at her will. She would
> need to elevate her legs 12 inches for a
> total of two hours, intermittently, during an
> eight hour workday.

(R. at 22). In making his RFC findings, the ALJ gave some weight

to the opinions of the state agency assessments (including the

assessment by Dr. Richmond) (R. at 27), and also gave some weight

to the opinion of Dr. Spindell, who testified at the hearing (R.

at 28). The ALJ also noted that Dr. Toma stated that plaintiff

could perform light work (R. at 24). For the reasons set forth

previously, the ALJ gave little weight to the opinions of Dr.

Brown, a treating physician.

Dr. Richmond opined that plaintiff could lift and/or carry

consistent with light work (frequent lifting or carrying of 10

pounds, occasional lifting or carrying of 20 pounds, R. at 279,

20.C.F.R. § 404.1567(b)), could sit for 6 hours and could

stand/walk for 6 hours in an 8 hour workday.  He found that plaintiff would be limited to occasional postural limitations (R. at 280), and that plaintiff should avoid concentrated exposure to vibration and hazards (R. at 282).  Dr. Spindell testified that plaintiff could perform sedentary, if not light work (R. at 604). The RFC findings of the ALJ incorporate these limitations.

The ALJ also included other limitations based on the evidence and the testimony of the plaintiff that he found to be credible.  For example, the ALJ found that plaintiff would need a sit/stand option of either 30 minutes standing or sitting at her will (R. at 22, 618).  At the hearing, the ALJ noted that plaintiff had been able to sit for 30 minutes; he determined based on that observation that plaintiff could sit that long (R. at 618).  This finding is not inconsistent with the medical opinion evidence which the ALJ relied on in making his RFC findings.

Plaintiff argues that the ALJ offered no explanation for not including in plaintiff's RFC the opinions from two state agency assessments (by Dr. Bowles and Dr. Sutton) that plaintiff was moderately limited in her ability to interact appropriately with the general public (R. at 286-288, 295-297).  Both psychologists stated that plaintiff is able to interact socially, on at least a limited basis, but would become stressed with public work or constant public work (R. at 288, 297).  According to SSR 96-8p,

if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. However, the ALJ did not include this limitation in his RFC findings, and provided no explanation for not including this limitation in his RFC findings.  The question for the court is whether this failure by the ALJ to comply with SSR 96-8p is harmless error.

Courts should apply the harmless error analysis cautiously in the administrative review setting.  Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

At step five, the ALJ, relying on vocational expert (VE) testimony, found that plaintiff could perform the jobs of surveillance system monitor, credit checker/call-out operator, and document preparer (R. at 29-30, 619-621).  In the case of Hackett v. Barnhart, 395 F.3d 1168, 1175-1176 (10th Cir. 2005), the court held that the Dictionary of Occupational Titles (DOT) indicates that "contact with the public is rather limited" for

17

the positions of surveillance system monitor and call-out operator.  The VE even testified that these jobs are fairly solitary jobs.  395 F.3d at 1176.  In Hackett, the claimant's RFC included a limitation that she avoid direct contact with the general public and have only occasional interaction with coworkers.  The court held that these limitations did not conflict with the VE's opinion that plaintiff could perform those jobs.  395 F.3d at 1175-1176.

The third job identified as one that plaintiff could perform is that of a document preparer.  According to the DOT, interaction with people is considered "not significant."  1991 WL 672349 (DOT 249.587-018).  Given the limited nature of contact with the public or people with the three jobs that plaintiff was considered able to perform, the court finds, on the facts of this case, that the ALJ's failure to either include in plaintiff's RFC a moderate limitation in the ability to interact with the public, or explain why such a limitation was not included in the RFC, is harmless error.

The ALJ stated that he gave some weight to the opinions of the two state agency psychologists in making his mental RFC findings (R. at 27).  The ALJ limited plaintiff to simple, routine, repetitive work that is as stress free as possible (R. at 22, 618).  The court finds that this limitation is basically consistent with the opinions of Dr. Sutton and Dr. Bowles who

indicated that plaintiff is moderately limited in her ability to understand, remember and carry out detailed instructions (R. at 286-288, 295-297).

The record also contains a medical source statement-mental from a treatment provider, ARNP Wooldridge (R. at 471-474), in which the ARNP opines that plaintiff is markedly limited in 1 category, moderately limited in 4 categories, mildly limited in 6 categories, and not significantly limited in 9 categories (R. at 470-474). The ALJ gave little weight to this opinion because it was conclusory, inconsistent with the signs and findings in the progress notes of record,[1] and does not indicate the impact plaintiff's failure to take medication on a regular basis would have on this opinion (R. at 27-28). Plaintiff does not take issue with any of the reasons set forth by the ALJ for discounting the opinion of the ARNP.

On the form filled out by the ARNP, it states that it is important that the mental health source provide the basis for their opinions. However, despite this specific request on the form for an explanation of the opinions provided, the ARNP provided no narrative explanation of the basis for her opinions (R. at 473-474). The opinion of a treatment provider may be rejected if it is brief, conclusory and unsupported by medical

---

[1]The ALJ in his decision discussed in some detail the mental health treatment notes which he felt were not consistent with the opinions of the ARNP (R. at 24-25).

evidence. <u>Griner v. Astrue</u>, 281 Fed. Appx. 797, 800 (10th Cir.
June 12, 2008); <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1099 (10th
Cir. 2003).

Furthermore, the ALJ gave greater weight to the opinions of
two nonexamining psychologists who reviewed the medical records,
Dr. Sutton and Dr. Bowles (R. at 27, 286-288, 295-297).
Psychologists are "acceptable medical sources" under the
regulations. 20 C.F.R. § 404.1513(a)(2). An ARNP is an "other
source" under the regulations. 20 C.F.R. § 404.1513(d). The
fact that an opinion is from an "acceptable medical source" is a
factor that may justify giving that opinion greater weight than
an opinion from a medical source who is not an "acceptable
medical source" because "acceptable medical sources" are the most
qualified health care professionals. SSR 06-03p, 2006 WL 2329939
at *5. Dr. Sutton and Dr. Bowles are both acceptable medical
sources, which can serve as a legitimate reason for giving their
opinions greater weight than the opinion of ARNP Wooldridge.

Furthermore, under the regulations, 20 C.F.R.
§§ 404.1527(d)(5), 416.927(d)(5), an ALJ can give greater weight
to a medical specialist's opinion, such as a psychologist, rather
than to opinions of non-specialists. <u>Sneed v. Barnhart</u>, 88 Fed.
Appx. 297, 300 (10th Cir. Jan. 30, 2004); <u>Palmer v. Dep't of
Health & Human Services</u>, 50 Fed. Appx. 957, 961-962 (10th Cir.
Nov. 13, 2002). Therefore, an ALJ may properly accept the

opinion of a consulting specialist over that of a general practitioner.  Although experience and knowledge of the case lie on the side of the treatment provider, expertise and knowledge of similar cases lie on the side of the consulting specialist.  How these weigh in a particular case is a question for the ALJ, subject only to the rule that the final decision must be supported by substantial evidence.  <u>Stephens v. Heckler</u>, 766 F.2d 284, 288-289 (7th Cir. 1985)(the court upheld the decision of the ALJ to give greater weight to the opinions of an orthopedic surgeon and a neurologist, who performed consultative examinations on the plaintiff, over the opinions of plaintiff's treating general practitioner).  Dr. Sutton and Dr. Bowles are specialists in mental health treatment, which is also a legitimate reason for giving their opinions greater weight than the opinion of ARNP Wooldridge.  Therefore, the ALJ had a legitimate basis for giving greater weight to the opinions of the two psychologists and discounting the opinions of a treating ARNP.

Plaintiff also alleges that the ALJ failed to properly evaluate the effect of her obesity when making his RFC findings (Doc. 13 at 21).  However, the ALJ stated in his decision that while plaintiff is obese, she has provided no evidence that this impairment has negatively impacted any of her other impairments (R. at 25).  Plaintiff failed to cite to any evidence that her

obesity has negatively impacted her other impairments. Therefore, the court finds no error in the ALJ's consideration of plaintiff's obesity.

Plaintiff further asserts that the ALJ erred by stating that the plaintiff can perform sedentary work without first identifying plaintiff's work-related abilities on a function-by-function basis (Doc. 13 at 22). SSR 96-8p states that the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a "function-by-function" basis. Only after that may the RFC be expressed in terms of the exertional levels of work (sedentary, light, etc.). 1996 WL 374184 at *1. At both step four and step five of the sequential evaluation process, the RFC must not be expressed solely in terms of the exertional categories. 1996 WL 374184 at *3-4. At step five, the RFC must be expressed in terms of the exertional category. However, in order for an individual to do a full range of work at a given exertional level, the individual must be able to perform substantially all of the exertional and nonexertional[2] functions

_____

[2]Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling. Nonexertional capacity considers any work-related limitations and restrictions that are not exertional. Nonexertional limitations include limitations in mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling,

required in work at that level.  Therefore, it is still
"necessary" to assess the individual's capacity to perform each
of the exertional and nonexertional functions in order to decide
which exertional level is appropriate and whether the individual
is capable of doing the full range of work contemplated by the
exertional level.  1996 WL 374184 at *3.

However, in this case, the ALJ did not limit his RFC
findings to a finding that plaintiff can perform sedentary work,
but went on in some detail to note specific mental, postural,
manipulative, and environmental limitations.  Furthermore, the
limitation to the exertional requirements associated with
sedentary work[3] is consistent with or even more restrictive than
the opinions of the medical sources relied on by the ALJ in his
physical RFC findings (Dr. Richmond, Dr. Toma, and Dr. Spindell).
Although the ALJ should have specified the limitations for each
exertional function, on the facts of this case, and in light of
the medical opinion evidence relied on by the ALJ, the court
finds that the ALJ's RFC findings substantially comply with the

---

fingering, feeling and environmental limitations.  SSR 96-9p,
1996 WL 374185 at *5.

[3]Sedentary work is defined as work that involves lifting or
carrying no more than 10 pounds occasionally, and involves
sitting most of the time, along with a certain amount of walking
and standing in carrying out job duties for brief periods of
time.  20 C.F.R. § 404.1567(a); Selected Characteristics of
Occupations Defined in the Revised Dictionary of Occupational
Titles (SCO) (U.S. Dept. of Labor, 1993 at C-3).

requirements of SSR 96-8p.

Finally, plaintiff asserts that the ALJ failed to show which medical records substantiated his conclusion that plaintiff would need to elevate her legs only 12 inches every two hours on an intermittent basis (Doc. 13 at 23). At the hearing, the ALJ noted that Dr. Spindell, the medical expert, had testified that there was no indication in the record that plaintiff would need to elevate her legs (R. at 604-605). However, the ALJ chose to give some credence to plaintiff's testimony, and included this limitation in her RFC (R. at 618-619).[4] Plaintiff indicated at the hearing that her legs were not elevated when asked by the ALJ (R. at 619).

According to SSR 96-8p, the ALJ does not have to rely solely on medical evidence of a limitation; the ALJ can also rely on nonmedical evidence, including daily activities and observations. 1996 WL 374184 at *7. Despite the fact that none of the medical opinions relied on by the ALJ in making his RFC findings included a limitation allowing plaintiff to elevate her leg 12 inches for 2 hours, intermittently, the ALJ gave some credence to her testimony that she needed to elevate her legs, and included this limitation in her RFC. The court has previously determined that the ALJ's finding that plaintiff was not fully credible was

---

[4]The ALJ had acknowledged plaintiff's testimony that she needs to elevate her legs most of the day (R. at 23).

supported by substantial evidence.  In making his credibility findings, the ALJ noted that plaintiff, during a part of the time that she alleged she was disabled, had been babysitting a granddaughter pretty much full time, and took care of her father who could barely walk (R. at 26, 263, 382).  Although the evidence may support a contrary finding, the court finds that, in weighing the medical and nonmedical evidence, it was not unreasonable for the ALJ to conclude that plaintiff would only need to elevate her legs 12 inches for a total of two hours, intermittently, especially in light of some her activities, including babysitting and taking care of her father who could barely walk.

**VII.  Did the ALJ err at step five by failing to resolve a conflict between the VE testimony and the Dictionary of Occupation Title (DOT)?**

The ALJ limited plaintiff to simple, routine, repetitive work that is as stress free as possible (R. at 22, 618).  Based on this and other limitations, the ALJ determined, relying on the testimony of the VE, that plaintiff could perform other work in the national economy, including work as a surveillance system monitor, credit checker (call-out operator), and a document preparer (R. at 29-30, 619-621).  Plaintiff contends that there is a conflict between the VE testimony and the DOT which the ALJ failed to resolve, in violation of SSR 00-4p.

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT [Dictionary of Occupational Titles] (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1. In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work. Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled. At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency. If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. 2000 WL 1898704 at *2.

All three positions have a reasoning level of 3[5] (DOT
379.367-010, 1991 WL 673244; DOT 237.367-014, 1991 WL 672186; DOT
249.587-018, 1991 WL 672349). Plaintiff relies on a statement in
Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005), that a
limitation to simple, routine and repetitive tasks "seems
inconsistent with the demands of level-three reasoning." In
Hackett, two of the jobs identified as jobs that plaintiff could
perform required level 3 reasoning. The case was therefore
reversed in order to allow the ALJ to address the apparent
conflict between the VE testimony and the level 3 reasoning
required by the jobs in the DOT. Id.

However, in Hackett, there was no indication that the VE was
asked, as required by SSR 00-4p, whether his opinions were
consistent with the DOT. By contrast, in the case before the
court (Blanchard), the VE testified that his opinions did not
conflict with the provisions of the DOT except to note that the
sit/stand option and the elevation of the legs are not addressed
in the DOT (R. at 621-622). Furthermore, plaintiff's counsel did
not address or develop this issue at the administrative hearing.
To the extent that there is any implied or indirect conflict
between the VE's testimony and the DOT, the ALJ may rely upon the

---

[5]A reasoning level of 3 requires the application of
commonsense understanding to carry out instructions furnished in
written, oral, or diagrammatic form, and to deal with problems
involving several concrete variables in or from standardized
situations. DOT at 1011.

VE's testimony, provided that the record reflects an adequate basis for doing so.  All kinds of implicit conflicts are possible and the categorical requirements in the DOT do not and cannot satisfactorily answer every such situation.  Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.  Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. Dec. 18, 2003)(quoting with approval Carey v. Apfel, 230 F.3d 131, 146-147 (5th Cir. 2000); see Schassar v. Astrue, 2009 WL 3241597 at *5-6 (D. Kan. Oct. 5, 2009).

Therefore, because the VE testified that there are no conflicts with his testimony and the DOT, and there was no identification or adversarial development of an apparent conflict between the VE's testimony and the DOT, the ALJ did not err by relying on the testimony of the VE that there were no conflicts with the DOT.  On these facts, the ALJ had no further duty to investigate any apparent, implied or indirect conflict between the VE's testimony and the DOT in regards to the reasoning level of the jobs identified by the VE.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42

U.S.C. § 405(g).

Dated this 21st day of July, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge